277 So.2d 364

Arthur James DANIELS

v.

STATE.

3 Div. 96.

Court of Criminal Appeals of Alabama.

April 3, 1973.

Rehearing Denied May 1, 1973.

William J. Baxley, Atty. Gen., and John A. Yung IV, Asst. Atty. Gen., for the State.

Frank W. Riggs, Montgomery, for appellant.

ALMON, Judge.

Arthur James Daniels was jointly indicted with three other persons for the robbery of James T. Weldon. A severance was granted and appellant was given a separate trial. He was found guilty by a jury and his punishment was fixed at twenty-five years in the penitentiary.

Billy White testified that he worked for Hall Brothers Dairy Farms and was employed as a route man to deliver milk; that on December 18, 1967, at approximately 7:15 A.M. he went to the Weldon Grocery Store on Robinson Street in Montgomery to deliver milk. When he entered he found Mr. Weldon lying on the floor in the back of the store. He testified that he could not find a pulse and that in his judgment Mr. Weldon was dead. White further testified over objection that Mr. Weldon always kept money in his pants pocket and would take the money from his pocket and pay him for milk.

Dr. George [sic] A. Willis, a physician and Coroner of Montgomery County, testified that he arrived at Weldon's Grocery Store about 8:30 A.M. on December 18, 1967, and found a man dead and lying face down on the floor in a pool of blood. He testified that he examined the body and that the throat had been cut on the left side extending from the median in front around behind the left ear; that the right cheekbone was crushed; that the right eye was bruised and the nose broken; and that he had a laceration on the back of his head. His examination revealed that several of the large blood vessels in the neck were cut and he stated that in his opinion death occurred as a result of hemorrhage from the cutting of large blood vessels. He further testified that the man did not have any money on him when he examined him.

Frank Bailey testified that he knew the appellant and saw him on Monday, December 18, 1967, at about 5:30 or 6:00 A.M.; that Louis McIntyre and James Taylor were with him at that time; that two of these men spent the night in the witness's car in front of his home; that they came to his home early; that the appellant asked him to go across town to the house of a friend by the name of Jim Jack; that he went with them; and that they went to the corner of Alsop and Robinson Streets. Weldon's Grocery Store is located on this corner. He further testified that they went "over there" in his automobile and Louis McIntyre drove it; that they stopped the car on Alsop Street, which is behind the store; that the appellant and James Taylor got out of the car and walked beside the store; that they turned the corner in front of the store; that he did not see them again until they returned to the car; that they were gone about fifteen to thirty minutes; and that when they got back they said, "He wasn't home, let's go."

Frank Bailey further testified that when they got back to the car they looked like they had been "tusslin'" with someone; that Taylor had a little spot of blood on him and appellant had a coat laid across his arm and it looked like there was a spot on his left or right arm; that they all went back to his home; that the others said they wanted to go to Florida; that he got his clothes together and they left; that they went out Mulberry Street and turned back on a street and came out on Woodley Road; that they took a route by Huntingdon College, by a movie theater or shopping center, and by a filling station; that appellant was sitting on the back seat as they drove by Huntingdon College and he saw him with his hand out the window; that he had seen Taylor with a knife before that date; that after they got to Florida he saw appellant with a knife; that he believed the knife he saw appellant with was the same one he saw Taylor with; that it was a brown pearl handled knife;

that he and appellant were placed in jail in Florida; that appellant made a statement to Daniel Blocker, who was also in jail with them, about the incident in Montgomery; that no threats had been made to appellant; that he had not been offered any reward for making the statement; that he had not been threatened; that no police officer or public law enforcement people were present at the time; and that appellant stated that he "had done killed somebody back here in Alabama."

Annie Deloise Wyman, who was Frank Bailey's sister, testified in substance that on the morning of December 18, 1967, Frank Bailey, Louis McIntyre, appellant, and James Taylor left her home together at about 6:30 A.M. and came back between 7:00 and 7:30 A.M.; that "when they came back the second time, Louis—Taylor told Frank to come on, he was going to Florida;" that she said, "You goin' to Florida and don't have no clean clothes . . . and no money," and that he said, "Man, I don't need no money; I got some money;" that when they came back the appellant looked like he had been wrestling; that when they came back James Taylor had blood on his right sleeve; and that James Taylor had a "little bitty gun" when they came back.

Archie Lee Robinson testified in substance that in the middle of December, 1967, he found a billfold between Huntingdon College and Thomas Avenue; that he found some identification cards in it with the name Weldon on them; that there was not any money in it; and that he turned the billfold over to the police. He identified the billfold shown to him by the district attorney as being the one he found.

William B. Weldon testified in substance that he saw his father, J. T. Weldon, the deceased, on Sunday, December 17, 1967, and he was in good health; that he received a call about seven on Monday morning and went to the store; that State's Exhibits Nos. 2, 3 and 4 were pictures of his father as he found him upon arrival at the store; that he saw his father almost every day; that he had the habit of carrying money on his person, at times large amounts; that no money was found on his person when he arrived at the store; that State's Exhibit No. 6 was his father's billfold; that it was not on his father when he got to the store; that when he got to the store the cash register was open, the drawer was out, and there was no money in it. State's Exhibits Nos. 2, 3, 4 and 6 were admitted in evidence. This concluded the State's evidence.

The appellant placed the court reporter on the stand and she testified to portions of the testimony of Bailey on the previous trial of appellant. This was in an effort to impeach Bailey.

At this point the appellant rested and moved to exclude the State's evidence on the ground that there had been no proof of robbery. That motion was overruled by the trial court.

The appellant's request for the general affirmative charge was denied.

■ Most of the incriminating evidence against appellant came from the testimony of Frank Bailey. Bailey was also under indictment for the same offense. The fact that Bailey was jointly indicted with the appellant will not per se raise a presumption that he was an accomplice. The test as to whether a witness is an accomplice within the meaning of Tit. 15, § 307, Code 1940, is: Could he have been indicted and convicted of the same offense? The mere presence of a witness at the scene of a crime where he does nothing to aid and abet is insufficient to show him to have been an accomplice as is contemplated by the statute. Snowden v. State, 27 Ala. App. 14, 165 So. 410. Where, as here, there is doubt whether a witness is in fact an accomplice and the testimony is susceptible to different inferences on that point, then the question is for the jury and not the Court. Horn v. State, 15 Ala.App. 213,

72 So. 768. According to Bailey's testimony he was unaware that appellant and the others were intending to commit a robbery. Whether this testimony was believable was for the jury. This issue was properly submitted to the jury via given written requested charges and decided adversely to appellant.

■ It was proper for the trial court to admit testimony that Mr. Weldon usually carried, or was in the habit of carrying, money in his pant's pocket. See Carwile v. State, 148 Ala. 576, 39 So. 220, in which the Court said:

"Defendant objected to the evidence of McCluskey, 'Deceased usually carried his billbook in his inside breast pocket.' This court seems to have become committed to the proposition that a witness can testify to the habit or custom of another. Naugher v. State, 116 Ala. 463, 23 So. 26; Wiley v. State, 99 Ala. 146. 13 So. 424. This is true when such custom or habit is known to the witness testifying.

"The state's theory was that the defendant killed deceased in order to get certain papers he held against him and which were in the billbook referred to, and that said book was found in the road, and that it must have been extracted from the pocket of the deceased, and was therefore relevant."

■ Appellant argues that when the victim of a robbery is killed, it is prejudicially erroneous to admit detailed testimony as to the cause of death, and it is also erroneous to admit photographs showing the body of the deceased. He argues with some force that this evidence is irrelevant and prejudicial. However, our Supreme Court has adopted a different view. Cobern v. State, 273 Ala. 547, 142 So.2d 869, was a robbery case in which the Court said:

"Appellant brings very cogent argument that the photographs of the victim introduced by the State were inadmissible, shed no light on the matters at issue, and were but gruesome evidence, the sole effect of which was to inflame the jury. We do not think so, and even appellant in brief 'acknowledges the fact that the Supreme Court of this state has been liberal in the admission of gruesome photographs into evidence, though the same be merely cumulative in nature.' Robbery is a crime of violence and undoubtedly the photographs of the victim, even though unsightly, were admissible as tending to illustrate the gravity of the assault. By analogy see Johnson v. State, 272 Ala. 633, 133 So.2d 53(4); Reedy v. State, 246 Ala. 363(10), 20 So. 2d 528."

Since our Supreme Court has adopted this view, we perceive no error in allowing a coroner or physician to testify as to the cause of death. This holding has support in the case of Brown v. State, 120 Ala. 342, 25 So. 182. Although the victim in *Brown* did not die, the rationale of that case supports our holding. In *Brown* the facts were:

". . . Prior to the examination of this witness, the State had introduced as a witness the physician who had sewed up the wound inflicted upon Jasper Hicks, and this witness testified as to the character of the wound. Upon further examination of J. H. Hicks as a witness, he was asked the following question: 'What has been the effect upon you of this assault?' The defendant objected to this question, on the ground that it called for illegal and irrelevant evidence. The court overruled the objection and the defendant duly excepted. The witness in answer to the question testified that he was sick for some time afterwards; that he had been permanently affected by the blow, in that his sense of smell and taste had been impaired; that he has a dizzy feeling when he goes to get up and that when he stoops over he has a feeling like vertigo; and none of these affections he had before he was struck. The defendant

moved to exclude this answer from the jury, on the ground that such testimony was illegal and irrelevant and had no connection with the issue involved in this case. The court overruled this motion, and the defendant duly excepted. . . ."

And, in disposing of that issue, the Court held:

"Robbery is an offense against the person as well as . . . against the property of the party robbed,—against the person by violence, and against the property by manucaption with felonious intent of taking the property. James v. The State, 53 Ala. 380; Thomas v. The State, 91 Ala. 34, 9 So. 81. There was no error, therefore, in allowing the prosecutor, Hicks, to show the nature and extent of the violence to his person, employed by the robber."

At the conclusion of the State's direct examination of Frank Bailey the record discloses the following:

"MR. RIGGS: I just want to make [sic] the Court to supply me with a copy of statements that have been taken from Frank Bailey.

"THE COURT: Overrule your motion.

"MR. RIGGS: May I state in support of my motion that his testimony today is inconsistent with his testimony at the previous trial of the case.

"THE COURT: You have a right, if you have transcribed the testimony at a previous trial or you can bring it out on cross-examination. Overrule your motion."

As can be seen from the above quoted portion of the record, defense counsel moved the court to produce statements "that have been taken" from witness Bailey. This motion was apparently overruled without any discussion. Then defense counsel further stated in support of his motion that this witness had given testimony inconsistent with his testimony at a former trial. The court responded that this could be taken advantage of on cross-examination. Without any further discussion or objection, the matter seemed to have been abandoned and later in the trial we note that defense counsel did indeed attempt to impeach the witness by showing inconsistent statements.

We do not know whether any such statement or statements existed. Neither do we know, if in fact they existed, whether they were in writing, prepared by the witness or prepared by another at his insistence and signed by him, or otherwise authenticated by him. It is our understanding of the law that unless such was the case they would not be producable in any event. And it might very well have been that defense counsel did not have actual knowledge of any such statements. Certainly at this point defense counsel could rather forcefully argue that it is impossible for him to lay a predicate of the existence of any statement as a condition precedent to its production. This rather awkward situation prompted us to recommend a procedure in Cooks v. State, 50 Ala.App. 49, 276 So.2d 634, 1973, as follows:

"We heartily recommend the in camera procedure set out in Palermo v. United States, 360 U.S. 343, at p. 354, 79 S.Ct. 1217, 3 L.Ed.2d 1287, i. e., when it is doubtful whether there exists a 'statement' as defined in this opinion, then the trial judge should confer with counsel, the defendant being present, apart from the jury to reach a determination as to the existence of any such alleged statement. The proceedings should be taken by the official court reporter to be made as part of the record."

We do not think it is advisable to predicate error with the record in this posture.

The judgment appealed from is due to be affirmed.

Affirmed.

All the Judges concur.