312 So.2d 573

**Eugene FORTENBERRY**

v.

**STATE.**

**7 Div. 321.**

Court of Criminal Appeals of Alabama.

May 6, 1975.

Burns, Carr, Shumaker & Davis, Centre, for appellant.

William J. Baxley, Atty. Gen., and Sarah M. Greenhaw, Asst. Atty. Gen., for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

This is an appeal from a conviction of rape, for which defendant was sentenced to thirty years imprisonment in the penitentiary in accordance with the verdict of the jury.

In a three-paragraph statement appellant sets forth a summary of the facts, adopted by appellee as being substantially correct.

We see no necessity for an extended discussion of the details. No contention is made that a jury question was not present-

ed as to the guilt of defendant. Our review of the record convinces us that, although the evidence is in irreconcilable conflict as between the testimony of the alleged victim and her friend (a sixteen-year-old boy who worked with the victim at a car wash place of business) and the testimony of defendant and codefendant, the verdict should not be disturbed, notwithstanding the extremely bizarre circumstances narrated by the witnesses, whether viewed from the standpoint of the one pair or the other. The first two testified emphatically as to all elements of the crime of rape. Appellant and codefendant, who was not tried at the trial from which this appeal arose, testified positively that there was no sexual intercourse between either defendant and the alleged victim on the occasion involved. They all agreed they had left Oxford, Alabama, in an automobile of the alleged victim and that sometime later that night they arrived near Pittsburg Lake in Cherokee County when the alleged rape, according to testimony of the alleged victim and her friend, took place. They both testified the trip was made by reason of a threat of death made by appellant. This was emphatically denied by defendants.

The sole question raised by appellant relates to that part of the record at the conclusion of the cross-examination of a State's witness, Ken Phillips, an investigator for Cherokee County Sheriff's Department, as follows:

"Q. Did you observe on the night of December the 23rd, whether the clothing that the prosecutrix was wearing was ripped or torn in any way?

"A. No, sir, I didn't.

"Q. Did you find a pistol or a gun in your investigation near the car or the scene or on the defendant?

"A. No, sir.

"Q. Did you find any other weapons other than the two which have been introduced in evidence?

"A. No, I did not.

"Q. Did you go inside of the house of Mr. Fortenberry to make the arrest?

"A. Yes, I did.

"Q. Did you handcuff the defendant?

"A. Yes, I did.

"Q. When was an identification made by the prosecutrix?

"A. At the Police Department in Piedmont.

"Q. In other words, you handcuffed and took them in before she identified them?

"MR. LATHAM: Now, we object. That is misleading.

"Q. How did she make an identification at the police station?

"A. Well, she gave me Eugene Fortenberry's name and another fellow's name known as Paul or Cotton, and he was sometimes referred to as 'Paul,' and other times as 'Cotton,' and gave me the physical description of him.

"Q. Well, now, did you take a written statement from either Mr. Cox or Mrs. Thompson?

"A. Yes, sir, I did.

"Q. Do you have those statements?

"A. Not with me.

"Q. Do you have them in your files?

"A. Yes, sir.

"MR. LATHAM: That's all at this time.

"The State rests.

"THE COURT: The State rests.

"What says the defendant?

"MR. KILLIAN: Your Honor, at this time I believe that we would

be entitled to see a copy of those statements for our own use.

"THE COURT: Well, there is no question about the identity.

"MR. KILLIAN: Well, the written statements by the witness after they take the stand and on direct examination and I am entitled to their statements for impeachment purposes.

"THE COURT: Well, it is just a work statement that the officer took. I don't know of any rule that says that you can use that.

"MR. KILLIAN: Well, I think that I can produce a case if given a few minutes.

"THE COURT: Seriously, are you just on a fishing expedition? If there is a question about a proper identification or the wrong person being arrested, certainly the description that he or she gave would be this man's name and reputation was known and they knew them without any more.

"MR. KILLIAN: But we need it for impeachment purposes, Your Honor.

"THE COURT: Well, that wouldn't have anything to do with it. I don't see how you could impeach them with that.

"MR. KILLIAN: Well, for inconsistencies, Your Honor.

"THE COURT: Well, you can't impeach a witness on immaterial or irrelevant facts.

"MR. KILLIAN: We respectfully except.

"THE COURT: All right, now. What says the defendant?

"MR. KILLIAN: We're ready.

"THE COURT: All right. Offer evidence on behalf of the defendant.

"EVIDENCE ON BEHALF OF DEFENDANT"

Appellant relies upon Benefield v. State, 39 Ala.App. 302, 100 So.2d 334, cert. denied, 267 Ala. 78, 100 So.2d 340. The cited case holds that written material used to refresh a witness' recollection in a criminal case must be shown to opposing counsel on demand. The case is inapposite. Here, whatever written material was involved had not been used, was not being used, and no effort was made to use it by the State. The existence of such written material was developed for the first time by defendant on cross-examination of a State's witness as shown hereinabove.

The quoted portion of the record does reveal a question that needs to be considered in the light of cases holding that a defendant is entitled at times, when properly requested, to be shown statements of witnesses against him in order that he may have the benefit of such information in any effort he may wish to make in impeaching the testimony of such witnesses on the basis of previous statements inconsistent with the testimony of the witness. The principle was given impetus in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1013, 1 L.Ed.2d 1103. The question was presented and comprehensively considered and determined in Mabry v. State, 40 Ala.App. 129, 110 So.2d 250, and in Cooks v. State, 50 Ala.App. 49, 276 So.2d 634, in which attention was called to the enactment of Congress (18 U.S.C.A. § 3500(e)) that the term "statement" of a witness that is required to be produced to be shown opposing counsel means:

"(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

**4**

In *Cooks, supra,* it was held:

"The first requisite necessary to secure for inspection production of a 'statement' of a witness for use on cross examination of the witness is that the statement must be one in writing prepared by him or prepared by another at his instance and signed by him or otherwise authenticated by him. In the instant case there was nothing to indicate by query of the witness by the defense or otherwise that the witness had given to any officer a written statement signed or authenticated by her. There was not laid in the evidence any showing that any statement made by the witness to officers before trial differed in any respect from statements made to the jury during trial. See Bellew v. State of Mississippi, 238 Miss. 734, 106 So.2d 146, cited with approval in the *Mabry* case, supra. Neither was there any such showing of inconsistency in testimony given by the witness at a preliminary hearing previously held and the testimony given by her on the trial before the jury. There is no showing that the statement requested, if any, was of such nature that without it the defendant's trial would be fundamentally unfair. The production for inspection of any such statement as above defined lies within the sound discretion of the court and we find no abuse of that discretion in the ruling here made. See Annotation, Right of Defendant in Criminal Case to Inspection of Statement of Prosecution's Witness for Purpose of Cross Examination or Impeachment, 7 A.L.R.3d, pp. 181, 217, 219, 213 citing the Mabry case, supra, and the authorities therein noted."

In *Cooks, supra,* we stated and in Daniels v. State, 50 Ala.App. 88, 277 So.2d 364, we repeated:

"We heartily recommend the in camera procedure set out in Palermo v. United States, 360 U.S. 343, at p. 354, 79 S.Ct. 1217, 3 L.Ed.2d 1287, i. e., when it is doubtful whether there exists a 'statement' as defined in this opinion, then the trial judge should confer with counsel, the defendant being present, apart from the jury to reach a determination as to the existence of any such alleged statement. The proceedings should be taken by the official court reporter to be made as part of the record."

By following the quoted recommendation, the trial court could likely have arrived at a determination satisfactory to both parties. Even so, we do not feel justified in reversing the trial court under the circumstances shown by the record. It is clear to us that at the time of the disclosure of the existence of some written statements, defendant was emphasizing the question whether prosecutrix had identified defendant. To some extent it is understandable that the trial court also emphasized that feature of the matter as shown by its comments. Defendant did not show that the written statements were signed by the witnesses or otherwise authenticated by them and did not attempt to show that in all material respects they were within the classification of statements that are required to be produced for the inspection of a party without access to them. If defendant could have shown such prerequisites to the production for his inspection of the statements, by further inquiry of the witness on the stand at the time, he should have made such inquiry. We cannot tell from the record whether the statements meet the requirements of productibility for inspection by defendant. The trial court could have proceeded of its own accord to a determination of that question, but in the absence of a motion or request that such a determination be made, or that steps be taken that could have led to such a determination, we adopt what was stated in *Daniels, supra:* "We do not think it is advisable to predicate error with the record in this posture."

Our review of the record as required by Title 15, Section 389, Code of Alabama 1940, fails to reveal any error prejudicial to appellant. The judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Hon. Leigh M. Clark, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, Acts of Alabama, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All the Judges concur.