356 So.2d 1238 (1978)
Jimmy Ross TURLEY
v.
STATE.
7 Div. 567.
Court of Criminal Appeals of Alabama.
March 7, 1978.
Rehearing Denied April 4, 1978.
*1240 J. L. Klinefelter, Burnham, Klinefelter, Halsey & Love, Anniston, for appellant.
William J. Baxley, Atty. Gen. and Susan Beth Farmer, Asst. Atty. Gen., for the State.
SIMMONS, Retired Circuit Judge.
Appellant-defendant, an indigent here and below, was indicted in Cleburne County for rape, tried and convicted on a plea of not guilty. The jury fixed punishment at ten years imprisonment. Judgment was properly entered and this appeal followed.
It appears that the alleged offense occurred on July 10,1973, about 10:30 or 11:00 A.M. This indictment was not the first indictment for the offense. The first indictment was fatally defective and demurrer thereto was sustained on April 8, 1974. We quote the bench notes:
"* * * Demurrer sustained to indictment as indictment returned as being in the Circuit Court of Calhoun, Ala., instead of the Circuit Court of Cleburne County, Ala. Case refered (sic) back to Grand Jury defendant bond set at 5,000.00."
This entry was pursuant to Title 15, § 258, Code of Alabama, Recompiled 1958. Rogers v. State, 126 Ala. 40, 28 So. 619, 620; Davis v. State, 145 Ala. 69, 40 So. 663.
We will first collate some of the evidence adduced at the trial.
The prosecutrix, age 17 at the time, testified that she first saw defendant on Saturday before July 10, 1973, which latter date was on Tuesday. This was when he came to a store where she was waiting on customers to help out a friend of hers. Defendant was in a car with one Jimmy Strickland whom she knew. She serviced the car with gasoline.
The next time she saw defendant was on Tuesday, July 10,1973, following the Saturday when he was at the store. The second occasion was at her home during the absence of her husband. Defendant made inquiry about buying an old automobile which was stored in a shed disconnected from the house. She went with him to show him the car which he manifested an interest in buying. He was drinking beer at the time. As prosecutrix returned to the inside of her home, defendant followed her through the back door. He wanted their phone number so he could contact her husband about selling him the car. She went inside to get a pencil and paper. It was then that he followed her inside. They wound up in the living room.
She testified that he told her his name was Randy Robertson and that he lived at Glennaddie Apartments, 1-A. When she handed him a piece of paper, "he grabbed me and forced me down in a chair."
"Q. What happened then?
A. I didn't know___I didn't know what was happening. I asked him to stop and he didn't stop, he kept on and I knew what was going to happen when he forced himself on me. So I started to trying to get away from him and fighting the best I could and so I told him, I said `Please, just stop just for a minute.' And I started to___I had to go through a hall and the front door was___To get to the other room and I thought if I could just get in the hall and to the door and I would be able to get out. And so we started back there and I started out the door and he grabbed my hair and he started to forcing me into the other room.
Q. Now, you say into the other room. What room was that?
A. Bedroom.
Q. All right. What happened then?
A. We went in there and he pulled me down and he started to forcing himself on me. Started to choking me and he pulled my hair and hit me.
Q. Now, let me ask you this. You first said that when you tried to run out the front door that he grabbed you by the hair and then after he forced you into the bedroom he still had you by the hair. Did he in fact pull any of your hair out?
A. Yes, sir.

*1241 Q. All right. Did he choke you?
A. Yes, sir.
Q. All right. Was he doing anything else?
A. Yes, sir. He told me to pull my panties down and pull my top up and he got on me and held me down and he was choking me.
Q. Now, let me ask you this, Mrs. Prater. You said that the defendant told you to pull your pants down and your top up. Did you in fact do that?
A. Yes, sir. He kept___I kept trying to get up, trying to get out but it didn't help done (sic), I couldn't get up. He kept forcing me down and choking me, pulling my hair and then he got on me like I said and he slid up on me, way up, toward my face with the lower part of his body and he__He forced his private part in__Into my mouth.
Q. Now, had he taken off any part of his clothing at that point?
A. His pants.
Q. And you said he forced his private part into your mouth?
A. Yes, sir.
Q. What happened then?
A. Then he slid back down and he kept___ He told me___ He had asked me what time my husband was suppose to get home and I told him he was just gone for a few minutes and that he would be back, and after this___After he asked me this___When he asked me this, this was in the other room and he asked me again and said, `Now, what time is your husband coming home?' And I told him 3:30 and he said `Well if he comes home early, I will just have to take care of him.' And so he slid back down on me and he forced his private part into mine."
The State adduced other evidence which supported the prosecutrix's testimony that she was forced by fear and violence to have sexual relations with defendant. We refer to evidence about scratches on her body, complaints and efforts to get help immediately following the episode.
Defendant took the stand and categorically denied that he committed any act of violence on the person of prosecutrix or put her in fear to induce the sexual intercourse. He contended that he had an artificial hip that was a physical handicap. He admitted going to prosecutrix's home on Tuesday, July 10, 1973. He admitted seeing prosecutrix at the gas station when, he claims, she came out to the car and kissed Jimmy Strickland.
Defendant admitted that he went to the home of prosecutrix to see an old car; that she went to a barn with him at which time he was drinking beer.
From the barn prosecutrix went back into the house where he was supposed to give her an address. They went into the living room where they engaged in some osculation.
We quote from Tr. p. 115:
"Q. Did her behavior create in your mind the belief that she had consented and was willing to participate in these acts?
A. Yes, she said she liked it and she was ready.
Q. She did say that?
A. Yeah."
We will now address the issues involved in this appeal.

I
Appellant's first contention is that he was entitled, for impeachment purposes and to obtain a fair trial, to inspect certain documents and statements made as a result of an investigation by the State of Alabama some four or five years prior to the trial.
It appears from the record that none of the statements were in the possession of the district attorney or his deputy district attorney. The trial court did not immediately deny the motion to produce, but made serious efforts to get these statements from the files of the Department of Public Safety in Montgomery, Alabama, where the *1242 state investigator had sent them for safekeeping.
The hearing, in camera, fails to produce facts to reveal what the missing statements contained. There is no showing that "any statement made by a witness (the prosecutrix or other witnesses) to officers before trial differed in any respect from statements made to the jury during trial." Also, there is no showing that "the statement requested, if any, was of such nature that without it the defendant's trial would be fundamentally unfair." Fortenberry v. State, 55 Ala.App. 1, 312 So.2d 573; Cooks v. State, 50 Ala.App. 49, 276 So.2d 634.
It is to be noted that the in camera hearing on the motion took place after the jury had been impaneled and the case was ready for trial. The court instructed the state investigator, who took the statements, to contact proper officials in Montgomery and get the statements sent to the court. The trial then continued on the merits. The statements did not reach the courthouse. The court denied defendant's motion to continue the case made during the progress of the trial when the statements did not arrive.
It occurs to us that the contents of the statements were highly speculative and for aught appearing, would not have contradicted what the witnesses testified. We will not put the court in error for refusing to continue the case.

II
Appellant-defendant contends that the trial court erred in declining to dismiss the prosecution because he was denied a speedy trial to which he had a constitutional right.
It appears in the record that the first indictment for the offense was on October 12, 1973, to which demurrer was sustained on April 8, 1974. Defendant was reindicted on January 27, 1975.
The record shows that on October 30, 1973, the case was continued until October 31, 1973. On November 19, 1973, the case was again continued and alias capias ordered; bond was raised to $6,000.00. On April 8, 1974, demurrer was sustained to indictment and defendant held for new indictment as we have already noted. Defendant's bond was reduced to $5,000.00. See Title 15, § 258, Recompiled Code 1958, which authorizes this procedure. We again note that the second indictment was returned on January 27, 1975.
After the demurrer was sustained there was not another grand jury in Cleburne County until August 6, 1974. We find that only one grand jury convened in Cleburne County between the adjudication on the demurrer and the date of the second indictment.
The record is not clear as to why an indictment was not returned in August, 1974; but, only five months elapsed before the indictment was returned. It is not shown that the State was at fault in not presenting the case to the grand jury until January, 1975, nor does it appear that this delay caused defendant any injury.
A supplemental record (bench notes of the trial court) shows that on February 11, 1975, (after the second indictment) the court ordered a conditional bond forfeiture and alias capias. Evidently the defendant was not in jail. Again on March 17, 1975, the case was continued. It appears that on October 6, 1975, alias capias again was ordered. Again on June 20, 1977, the case was continued, but we find that on August 23, 1977, defendant was "in open court, age 37." The court on that date appointed Honorable James L. Klinefelter to represent him. We infer from the entries that defendant was not arrested on the alias capias until on or about August 23,1977. It is reasonable to infer from the record that he was released on the second bond of $5,000.00 when he was held to await another indictment.
It appears to us that defendant was at fault in not ascertaining from the circuit clerk the status of his case instead of depending on random inquiries as to such status. He was at fault and not the court or the State.
*1243 We want to note here that the circuit court takes judicial notice of its own records. This Court does not take judicial knowledge of the circuit court records. Statham v. Statham, 282 Ala. 322, 211 So.2d 456; Roan v. Smith, 272 Ala. 538, 133 So.2d 224. We take notice of the circuit court records when they are certified to this Court. Davis v. Davis, 261 Ala. 95, 72 So.2d 852. Courts judicially know their own records. Lovejoy v. State, 32 Ala.App. 110, 22 So.2d 532, cert. den. 247 Ala. 48, 22 So.2d 537.
The trial court heard the State's motion for a supplemental record. The court stated "I read those orders over myself in determining whether or not to dismiss the case for want of a speedy trial."
We conclude that the delay in the trial was caused by the defendant not being available for trial after the second indictment. Certainly the sheriff would have arrested him under an alias capias that was ordered had he been in the county. Cole v. State, 52 Ala.App. 447, 293 So.2d 871(4); Braden v. State, 47 Ala.App. 466, 256 So.2d 425. We quote from Braden as follows:
"The right to a speedy trial is a relative right which depends upon the circumstances of each case. It is designed to prohibit arbitrary and oppressive delays caused by the prosecution. It does not operate to deprive the state of a reasonable opportunity of prosecuting criminals. Discretionary continuances granted by the trial judge, or delay occasioned by want of time to try, or any like circumstance, do not contravene the right. Likewise, an appellant cannot claim the right has been denied where the delay is occasioned by actions initiated by himself. Tiner v. State, 279 Ala. 126, 182 So.2d 859; Sample v. State, 138 Ala. 259, 36 So. 367."
We hold that the refusal of the court to dismiss the case because a speedy trial was not accorded defendant is free of error. Moulden v. State, 47 Ala.App. 573, 258 So.2d 915.

III
Appellant also contends that the court erred in not permitting appellant to show that he had prior sex relations with prosecutrix.
The trial court in refusing to admit the evidence relied on Act No. 251, Regular Session, 1977, which became effective April 21, 1977. § 12-21-203, Code of Alabama 1975.
Appellant contends that this section has no retrospective effect and has no application to the instant offense, which is alleged to have been committed on July 10, 1973.
It is to be noted that when the alleged rape was committed on July 10, 1973, evidence of prior sexual relationship between alleged victim of rape and the alleged rapist was admissible on the issue of consent vel non. McQuirk v. State, 84 Ala. 435, 4 So. 775(1), 5 Amer.St.Rep. 381. Appellant asserts that if Act No. 251, supra, is here applied it would make the law ex post facto in violation of appellant's constitutional rights.
The Supreme Court of Alabama, in Hart v. State, 40 Ala. 32 (1867), held that every law which alters and receives less or different testimony than the law required at the time of the offense, in order to convict the offender, is an ex post facto law. See also, Goode v. State, 50 Fla. 45, 39 So. 461(1).
The Supreme Court of the United States, in Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (March, 1884), observed at p. 589, 4 S.Ct. at p. 210, as follows:
"* * * Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not ex post facto in their application to prosecutions for crimes committed prior to their passage; for they do not attach criminality to any act previously done, and which was innocent when done, nor aggravate any crime theretofore committed; nor provide a greater punishment therefor than was prescribed at the time of its commission, nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to *1244 conviction when the crime was committed.
"* * * Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offence was committed, might, in respect of that offence, be obnoxious to the constitutional inhibition upon ex post facto laws. But alterations which do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt, butleaving untouched the nature of the crime and the amount or degree of proof essential to conviction only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the state, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury can be made applicable to prosecutions or trials thereafter had, without reference to the date of the commission of the offence charged."
Thus, we observe that since Hopt, supra, the Supreme Court of the United States has clarified the law. We do not think Act No. 251, supra, is ex post facto in its application to the instant ruling of the trial court.
We note that following an in camera hearing the trial court specifically made a finding that he did not believe the accused's testimony that he and the prosecutrix had prior sexual relations.
We think the trial court had authority to pass upon the truth of defendant's accusation of prior sexual contact with the prosecutrix, and if he did not believe the testimony to preclude its admission in evidence. It is akin to a confession wherein the court first determines its voluntariness, and if voluntary, admit it and let the jury decide what weight it will give the confession. If involuntary the court may preclude its admission.
We will not hold that the trial court in sustaining objection to the admission of the evidence to be error.

IV
Appellant asserts error in the court's refusal to give written charge as follows:
"Defendant's Charge No. 1
If the jury believe from the evidence that the conduct of the prosecutrix was such toward defendant at the time of the alleged rape as to create in the mind of the defendant the honest and reasonable belief that she had consented or was willing for defendant to have connection with her they must acquit the defendant.
Refused.
 W. C. Bibb
 Circuit Judge"
It also appears on p. 19 of appellant's brief.
The foregoing charge was approved in McQuirk, supra.
We do not think the court erred in refusing to give it in the instant case. We do not find any evidence of conduct on the part of the prosecutrix which implied consent. Defendant testified that he and she kissed each other in the living room. However, as appears, supra, we quote questions and defendant's answers:
"Q. Did her behavior create in your mind the belief that she had consented and was willing to participate in these acts?
A. Yes, she said she liked it and she was ready.
Q. She did say that?
A. Yeah."
We are convinced from defendant's evidence that he relied on oral and not implied consent from her conduct. After this actual consent, they went into the bedroom and engaged in the sexual act.
The trial court charged the jury on the several elements of rape. With respect to the element of consent the court charged as follows:
"* * * The third element, the woman must not willingly consent to the act of *1245 sexual intercourse but it must be against her will. * * *
* * * * * *
"* * * Of course the woman must not consent, she must yield through fear, simply constructive force. * * * But unless that consent was actually volunitarly (sic), it's not the kind of consent that the law would require."
In view of the actual consent as shown by the testimony, supra, of the defendant and the oral charge of the court, we do not see that the judgment should be reversed because the written charge, supra, was refused.

V
A fifth contention of error is that the trial court erred in permitting a physician to testify as to details of what the prosecutor told him about the rape when he made an emergency examination of the victim at a hospital in Gadsden.
As we view the record the objection to this testimony was based on defendant's assertion that the testimony was self-serving. Nothing was said about it being hearsay.
Defendant was bound by the specified ground. Prince v. State, 50 Ala.App. 644, 282 So.2d 83(4). Vol. 6A, Ala. Digest # 695(5). Trial court need not cast about for tenable grounds of objection to evidence. Marshall v. State, 219 Ala. 83, 121 So. 72. Specified grounds of objection to evidence waives all other grounds. Lackey v. State, 41 Ala.App. 46, 123 So.2d 186. Certiorari denied, 271 Ala. 699, 123 So.2d 191.
The judgment is affirmed.
The foregoing opinion was prepared by the Honorable BOWEN W. SIMMONS, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of § 6.10, of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
HARRIS, P. J., and TYSON and DeCARLO, JJ., concur.
BOOKOUT, J., dissents with opinion.
BOWEN, J., joins in above dissent.
BOOKOUT, Judge, dissenting:
I disagree with the construction which the majority places on Act No. 251, Acts of Ala.1977, approved April 21, 1977 (§ 12-21-203, 1977 Cumulative Supplement, Code of Ala.1975[1]). The purpose of Act No. 251 was to protect the victims of sexual crimes from intimidation in having all their past sexual behavior brought to light which is irrelevant to the case being tried. It is to encourage victims to report sex crimes and to testify against sexual deviates without fear of having all the victim's past sexual history exposed. The object of such act is commendable and is legally proper insofar as it limits the introduction of evidence irrelevant to the issue being tried. However, neither the legislature nor a trial judge may deprive a defendant in a criminal case of his constitutional right to give relevant testimony in his own behalf or to cross-examine witnesses against him on relevant matters. Article 1, § 6, Constitution of Alabama 1901.
Section 2(b) of Act No. 251 specifically provides that evidence relating to past sexual behavior of the complaining witness shall be introduced if the trial judge finds that the past sexual behavior directly involved the participation of the accused. For the trial judge to make such determination, the Act provides that an in camera hearing will be held. The Act further provides:
"At the conclusion of the hearing, if the court finds that any of the evidence introduced at the hearing is admissible under paragraph (b), the court shall by order state what evidence may be introduced by the defense at the trial of the case and in what manner the evidence may be introduced." *1246 The only criteria set out in paragraph (b), supra, for admissibility is that, "such past sexual behavior directly involved the participation of the accused."
The purpose of the in camera hearing is to allow the trial judge to listen to the testimony, outside the presence of the jury, in order to screen out evidence of prior sexual conduct of the prosecutrix generally and admit only evidence of her past sexual behavior directly involving the accused. This does not bestow upon the trial judge the authority to pass judgment upon the credibility of such testimony. If the defendant testified that he and the prosecutrix engaged in prior sexual conduct, such testimony is admissible pursuant to § 2(b) of Act No. 251 and should be submitted to the jury for whatever weight and credibility it desires to accord such evidence.
The appellant's defense in the instant case was that of consent on the part of the prosecutrix. Therefore, the appellant's testimony that he and the prosecutrix had engaged in prior sexual acts would certainly be relevant as bearing on the question of consent. Whether his testimony is believable or not is for the jury to decide. The trial judge would have no more right to pass upon the weight and credibility of the appellant's testimony in this instance than he would to pass upon the weight and credibility of a defendant's alibi testimony or testimony of self-defense in other criminal cases.
I therefore respectfully dissent.

ON REHEARING
SIMMONS, Retired Circuit Judge.
Our attention is directed to a slight factual deviation in our statement that the motion to continue was made during "the progress of the trial." We correct by stating that the motion was made in camera after the cause had been called for trial and the jury selected and impaneled.
Act No. 251, Acts of Alabama 1977, approved April 21, 1977 (§ 12-21-203, 1977 Cumulative Supplement, Code of Alabama 1975), has application to rape as well as to other sexual offenses. Subsection (c), supra, provides that evidence relating to past sexual misbehavior of the prosecutrix "shall be introduced if the court * * * finds that such past sexual behavior directly involved the participation of the accused." Introduction before the jury is inhibited unless the Court finds (in camera) that the accused was directly involved.
To find that defendant previously copulated by consent with the prosecutrix was to accept the truth of defendant's testimony. To fail to find participation by the prosecutrix was to disbelieve defendant's testimony. Hence, the trial Judge's statement that he did not believe the defendant.
The foregoing opinion was prepared by the Honorable BOWEN W. SIMMONS, a retired Circuit Judge, serving as a Judge of this Court, under the provisions of § 6.10, of the new Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
OPINION EXTENDED; APPLICATION OVERRULED.
HARRIS, P. J., and TYSON and DeCARLO, JJ., concur.
BOOKOUT and BOWEN, JJ., dissent.
NOTES
[1] Subsections of § 12-21-203, supra, are numbered differently than the sections in official Act No. 251, supra. This opinion refers to sections of the Act.