Randy Turpin Bell, alias Randy Cole, was indicted and convicted of the murder of Charles Mims while robbing him, in violation of § 13A-5-40 (a)(2), Ala. Code 1975. He was sentenced to death according to the guidelines set out in Beck v. State,396 So.2d 645 (Ala. 1980). The Court of Criminal Appeals affirmed the conviction and later overruled the application for rehearing. We granted certiorari as a matter of right. Rule 39 (c), A.R.A.P. We affirm.
The facts are set forth in the opinion of the Court of Criminal Appeals in this case. 475 So.2d 601.
The petitioner argues that the trial court committed reversible error by denying his request for the names of the witnesses expected to testify on behalf of the State. He argues that, as a result, he was denied a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by the Constitution of the State of Alabama, Art. I, § 6. *Page 611 
A defendant has no general constitutional right to discovery in a criminal case, Weatherford v. Bursey, 429 U.S. 545,97 S.Ct. 837, 51 L.Ed.2d 30 (1977). See, Peoples v. State,418 So.2d 935 (Ala.Cr.App. 1982); Wicker v. State, 433 So.2d 1190
(Ala.Cr.App. 1983); Brown v. State, 401 So.2d 213
(Ala.Cr.App.), cert. denied, 401 So.2d 218 (Ala. 1981); Deloachv. State, 356 So.2d 222 (Ala.Cr.App. 1977), cert. denied,356 So.2d 230 (Ala. 1978). The petitioner does not suggest that he was unduly limited in his right to a broad voir dire of the veniremen. He only argues that he has a right under the Constitutions of the United States and of this State to know the names of the State's witnesses for purposes of qualifying the jury on voir dire. In this, he is incorrect.
The petitioner also argues that the trial court committed reversible error by allowing a lay witness (Hubbard) to give an opinion as to whether the victim (Mims) was alive or dead at the time that the witness and the defendant left him.
A lay witness may not testify as to the cause of death, Jonesv. State, 155 Ala. 1, 46 So. 579 (1908); but, a lay witness may testify that another was dead. As noted by C. Gamble, McElroy'sAlabama Evidence § 128.10 (3d ed. 1977), there are some disorders with which all persons are familiar and which require no special skill to detect. Whether one is dead is a fact which does not require any special skill to detect. Thomason v.State, 451 So.2d 401 (Ala.Cr.App. 1984), and Dismukes v. State,346 So.2d 1170 (Ala.Cr.App.), cert. denied, 346 So.2d 1177
(Ala. 1977).
Hubbard's testimony at trial was as follows:
 "Q. All right. And you stated that he was shot at a range of approximately a foot, is that right?
"A. That's right.
"Q. How many times?
"A. Twice.
". . . .
 "Q. Did you see him [Mims] when you looked back the other times?
"A. The first time.
 "Q. All right. What did you see when you looked back that first time?
 "A. I seen him [Mims] — he was still laying down, and Randy was bent over observing.
 "Q. Okay. Based on what you saw out there happen to Charles Mims, and based on what you saw Charles Mims do after he was shot, in you opinion, was Charles Mims alive or dead? . . .
"A. He had to be. . . .
"Q. Had to be what?
"A. Had to be dead.
". . . .
 "Q. Michael Joe, in your opinion, was Charles Mims alive or dead?
"A. He was dead."
This amounts to no more than the witness's opinion that the victim was dead, and, therefore, it is permissible testimony. It does not express an inadmissible opinion as to the cause of death.
The petitioner contends that his conviction was based upon the uncorroborated testimony of an accomplice, Michael Joe Hubbard, in violation of § 12-21-222, Ala. Code 1975. Therefore, he argues, the State failed to present sufficient evidence to support the guilty verdict and, consequently, the trial court committed reversible error by denying his motion for a judgment of acquittal.
Section 12-21-222 reads as follows:
 "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
Whether a witness is an accomplice may be a question of law or fact, depending on the circumstances. Where there is a doubt or dispute concerning the complicity of a witness and the testimony is susceptible to different inferences on that point, *Page 612 
the question is for the jury. See Jacks v. State, 364 So.2d 397
(Ala.Crim.App.), cert. denied, 364 So.2d 406 (Ala. 1978). InJacks v. State, the Court of Criminal Appeals observed:
 "Daniels v. State, 50 Ala. App. 88, 277 So.2d 364
(1973), involved a prosecution for robbery. The state's chief witness against the defendant had also been indicted for the robbery.
 "`The fact that Bailey was jointly indicted with the appellant will not per se raise a presumption that he was an accomplice. * * * According to Bailey's testimony he was unaware that appellant and the others were intending to commit a robbery. Whether this testimony was believable was for the jury. This issue was properly submitted to the jury via given written requested charges and decided adversely to appellant.'
"Daniels, 50 Ala. App. 91, 92, 277 So.2d 367.
This is in accord with the general rule.
 "`If a witness admits his participation with the defendant in the crime but seeks by his testimony to explain it and to show his innocent intent, it has been held that a question is presented for the jury.' 19 A.L.R.2d 1352, 1381 (1951)."
364 So.2d at 403.
Hubbard testified that he and the defendant were alone with Mims at the time that he was robbed and subsequently killed. Hubbard's further testimony established his participation in the crime; however, he contended that his participation resulted from coercion, duress, and a lack of prior knowledge.
In Yarber v. State, 375 So.2d 1229 (Ala. 1978), the Court held that when a witness denies willing participation in the crime charged against the defendant, the issue of his being an accomplice presents a question of fact for the jury. In that case, the defendant and the alleged accomplice were alone with the victims at the time the crime was committed. At the trial, in which the defendant did not testify, the alleged accomplice denied that he had prior knowledge of or was a willing participant with the defendant in the crime. In the instant case, as in Yarber, the defendant did not take the stand at trial.
We do not agree with the Court of Criminal Appeals that the issue of whether Hubbard was an accomplice was a matter of law. It was, as it was in Daniels and Yarber, supra, for the jury to decide whether Hubbard's testimony as to his alleged innocent participation in the crime was believable. Our disagreement with the Court of Criminal Appeals on this issue, however, does not mean that the trial court erred to reversal in denying the petitioner's motion for a directed verdict.
First, it was not error to refuse to direct a verdict of acquittal on the basis that the State had failed to put on a prima facie case. The testimony of Hubbard was corroborated by at least three witnesses upon which we will elaborate shortly. Therefore, the case for the jury was made out.
Secondly, the jury charges which the defendant requested and which the trial court refused were all defective, and, therefore, it was not error to refuse them. Requested charges 23, 24, 25, 26, and 27, which were refused, read as follows:
 "Defendant's Requested Charge No. 23. Members of the Jury, I charge you that if you are convinced that Michael Joe Hubbard was a participant in the alleged charges in the indictment, then he would be an accomplice and you could not convict the defendant unless the State has corroborated the evidence."
 "Defendant's Requested Charge No. 24. Members of the Jury, the Court charges that Randy Cole cannot be convicted upon the testimony of Michael Joe Hubbard unless corroborated by testimony of witnesses as to material elements of the offense, and that unless you believe the testimony of the State's witnesses beyond a reasonable doubt, you should find the defendant not guilty."
 "Defendant's Requested Charge No. 25. Members of the Jury, the Court charges *Page 613 
that Randy Cole cannot be convicted upon the testimony of an accomplice unless corroborated by the testimony of other witnesses connecting the defendant with the commission of the offense which he is charged, and unless you believe from the evidence beyond a reasonable doubt that Joe Austin, Jr., and Carol Joiner have testified truthfully in this case, you cannot find the defendant guilty."
 "Defendant's Requested Charge No. 26. Members of the Jury, a mere recitation of the details of the crime is insufficient to corroborate the testimony of an accomplice if it fails to connect the accused with the offense."
 "Defendant's Requested Charge No. 27. Members of the Jury, I charge you that if you believe that Michael Joe Hubbard was a participant in the charges in this indictment, then the State must connect the defendant by other evidence, and if you find that the State has not connected the defendant by evidence other than that of Michael Joe Hubbard, then you must find the defendant not guilty."
A "participant" in a crime is not synonymous with an accomplice. Stevens v. State, 333 So.2d 852 (Ala.Cr.App. 1975).LaBryer v. State, 45 Ala. App. 33, 222 So.2d 361 (1969), cert.denied, 284 Ala. 732, 222 So.2d 366 (1969); Ferrell v. State,41 Ala. App. 659, 148 So.2d 656 (1963). Therefore, it was not error to refuse charges 23 and 27. Charge 24 was properly refused because the statute does not require corroborative testimony as to material elements of the crime; it only requires other evidence "tending to connect the defendant with the commission of the offense." The corroborative testimony here met the statutory test.
Charge No. 25 was properly refused because there was corroborative evidence other than the testimony of the two witnesses listed in the charge.
Finally, Charge No. 26 was properly refused because it is a mere abstract statement with no reference to the facts in this case.
For purposes of reviewing the record, however, we will assume that Hubbard was in fact an accomplice. In that posture, whether there was corroborating evidence tending to connect the defendant with the commission of the offense becomes a question of law. Miller v. State, 290 Ala. 248, 275 So.2d 675 (1973). InSenn v. State, 344 So.2d 192 (Ala. 1977), the test for determining the sufficiency of such corroborating evidence under § 12-21-222 was stated as follows:
 "`. . . The proper test for determining whether there was sufficient corroboration of the testimony of an accomplice has been set out in Sorrell v. State, 249 Ala. 292, 31 So.2d 82 (1947). The court held that, first, the evidence of the accomplice must be eliminated, and then, if upon examination of all other evidence, there is sufficient incriminating evidence tending to connect the defendant with the commission of the offense, there is sufficient corroboration. . . .'
 "Miller v. State, 290 Ala. 248, 275 So.2d 675, 677
(1973).
 "The corroboration which is sufficient to support the accomplices' testimony must be of some fact tending to prove the guilt of the defendant.
 "`. . . It must be of a substantive character, must be inconsistent with the innocence of the accused and must do more than raise a suspicion of guilt. . . .'
"Sorrell v. State, 249 Ala. 292, 31 So.2d 82, 83.
 "Such corroborative testimony need not be sufficiently strong in itself to support a conviction. `[I]t is sufficient if it legitimately tends to connect the accused with the offense.' Isbell v. State, 57 Ala. App. 444, 329 So.2d 133, 139, (1976, per Bookout, J.)." (Emphasis in original.)
344 So.2d at 193.
The evidence establishes that there was sufficient corroboration of Hubbard's testimony: *Page 614 
(1) The defendant told Joe Austin, Jr., at approximately 8:30 p.m. on the night of December 14, 1981, that he had met Mims that evening for the purpose of selling him stolen goods and then robbed him; and
(2) Mims was planning to meet with the defendant on the evening of December 14, 1981, to purchase certain goods; and
(3) Mims was seen by his wife and mother on the afternoon of December 14, 1981. They have not seen him since that time. Mims was in the habit of supporting his family and visiting his parents often, neither of which he has done since December 14, 1981; and
(4) Mims's wife expected him home at 8:00 p.m. on the evening of December 14, 1981. He never came home. On that same date, Mims went to the home of Ray Anthony Pairrett at approximately 6:00 p.m. and left at approximately 7:00 p.m. He told Pairrett that he was going home, but would return there later to watch the 10:00 p.m. news and drink coffee. He never returned; and
(5) The defendant's automobile and Mims's truck were seen parked together at the campground at approximately 7:00 or 8:00 p.m. on the evening of December 14, 1981; and
(6) Mims's truck was discovered abandoned on December 15, 1981, at the campground; and
(7) The defendant's automobile was discovered in Atlanta. The trunk was wet, and there was a strong odor of detergent. A box of .25-caliber automatic ammunition was found in the automobile; and
(8) On December 11, 1981, the defendant had purchased a box of .25-caliber automatic ammunition; and
(9) Mims's body has never been found.
The foregoing facts strongly support the conclusion that Mims died of criminal agency on December 14, 1981, between 7:00 p.m., when he left Pairrett's home, and 8:00 p.m., when he was expected home by his wife, or 10:00 p.m., when he was expected back at Pairrett's home. Mims was planning to meet with the defendant on the evening of December 14, 1981, and the defendant's automobile was seen parked together with Mims's truck at the campground between 7:00 p.m. and 8:00 p.m. on that date. The defendant told Joe Austin, Jr., at approximately 8:30 p.m. on the evening of December 14, 1981, that he had met Mims that evening and robbed him. Therefore, the defendant met with Mims between approximately 7:00 p.m. and 8:30 p.m., that crucial period when Hubbard testified that he was killed. Mims has not been seen or heard from since approximately 7:00 p.m. on the evening of December 14, 1981, when he left Pairrett's home.
The defendant also contends that the State failed to prove the corpus delicti and, consequently, the trial court committed reversible error by denying his motion for a judgment of acquittal. Because Mims's body has never been found, he argues that there is no evidence tending to prove that he was actually killed. We disagree.
Hubbard's testimony at trial is as follows:
 "Q. Michael Joe, you said that this is the area where Charles Mims was killed.
"A. Yes.
 "Q. Tell the ladies and gentlemen of the jury what happened when ya'll got to that area?
 "A. When we got to this area right here, Randy pushed Charles in that little trench right there, and shot him two times in the head. (INDICATING)
 "Q. All right. Now, Mike, I want you to demonstrate how Charles was pushed down by Randy, but I'm not going — I'm going to let you use Corporal Perdue.
 "HON. JANICE WILLIAMS [Assistant District Attorney]: If you will, come around here. Corporal Perdue, if you would, follow Michael Joe's instructions and let him show the ladies and gentlemen of the jury the position that Charles Mims was in. *Page 615 
". . . .
 "A. He was laying down in this position right here. (INDICATING)
 "THE COURT: Ya'll can stand up, if you want to, members of the jury.
". . . .
 "A. He was laying in this position with both of his hands behind his back tight, just like that. Randy was standing on this side of him, hold on to this — to this tree right here. (INDICATING). . . .
". . . .
 "A. To this tree right there. And that's the trench right there, where Charles was laying. (INDICATING)
"Q. What happened then, Mike?
 "A. He was holding onto the tree, just like this here. And he was bent over like that, and fired the gun two times. When he shot, the whole side of Charles' face lit up — this whole side right here lit up. (INDICATING)
 "Q. Michael Joe, in your best estimate, how far was that gun from his face, when he fired those two shots?
"A. I would say about a foot.
"Q. Okay.
". . . .
 "Q. Did you ever discuss the subject of Charles Mims' body with Randy Cole during the month of June of 1982?
"A. Yes.
". . . .
 "Q. All right. Did you again express to Randy your concern about somebody finding Charles Mims' body?
"A. Yes.
"Q. All right. What did he tell you then?
 "A. He told me he had went back by his self and put the body in the trunk of his car. He took it down the road a little piece.
 "Q. All right. Did he say what he had done with the body after he took it down the road a little piece?
 "A. He said he had talked to some man about how to get rid of the body, bones and all. He said he had poured some kind of acid on it.
"Q. Poured some kind of acid on it.
 "A. I don't know what kind, but I do know it was acid.
 "Q. Michael Joe, did you have any other occasions to discuss Charles Mims' body with Randy during the summer of 1982?
"A. I believe it was around August.
". . . .
"Q. What did you say?
 "A. I had asked — I said, `Hey, man, you ain't going to tell me what you did with the body?'
". . . .
"Q. What did he say to you then, Joe?
 "A. He said, `Joe, I trust you like a brother. I trust you enough to tell you about the bank robbery, but not enough to tell you about Charles.'
"Q. `Not enough to tell you about Charles.'
"A. Right.
 "Q. Now, Mike, when is the last time — the very most recent time that you can remember having a conversation with Randy Cole about where Charles Mims' body might be?
"A. It was the Friday before he got arrested.
"Q. All right. Do you know what month that was?
"A. February.
"Q. All right. What did he say at that time?
 "A. He told me — he said, `Joe, every time I do something I always close the door behind me, and don't leave no gaps.'
"Q. `Don't leave no gaps.'
"A. Right.
 "Q. Michael Joe, did Randy Cole ever tell you where he put that body?
"A. No."
Circumstantial evidence may also be an aid in proving the corpus delicti. Phillips v. State, 248 Ala. 510, 28 So.2d 542
(1946). State's witness, Dr. Joseph Embry, a forensic pathologist employed by the State of Alabama, testifying in response to a hypothetical question, stated that two shots fired from a handgun at a distance of *Page 616 
approximately twelve inches into the head of an individual are capable of causing the death of that individual. He was unquestionably shown to possess the qualifications necessary to testify as an expert in this regard. The State also proved that Mims was in the habit of supporting his family and visiting his parents often, neither of which he has done since December 14, 1981. He has not been seen or heard from since that date. Based on the foregoing, sufficient evidence was presented from which the jury could infer that the two shots fired by the defendant into the head of Mims caused his death.
The defendant's remaining contentions were fully and correctly decided by the Court of Criminal Appeals. We, too, have reviewed the propriety of the death sentence in this case, pursuant to the requirements of § 13A-5-53 (a), Ala. Code 1975, and Beck v. State, 396 So.2d 645 (Ala. 1980), and find that the sentence of death was appropriate. Therefore, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, EMBRY, BEATTY and ADAMS, JJ., concur.
ALMON, J., concurs in the result.