COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bumgardner and Retired Judge Smith[*]
Argued at Salem, Virginia


DONALD ROBERT PILCHER

                                    MEMORANDUM OPINION[**] BY
v.    Record No. 2483-01-3    JUDGE JAMES W. BENTON, JR.
                                         JULY 15, 2003
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                     Richard C. Pattisall, Judge

         John H. Kennett, Jr. (David A. Bowers, on
         briefs), for appellant.

         Kathleen B. Martin, Assistant Attorney
         General (Jerry W. Kilgore, Attorney General,
         on brief), for appellee.


     The issues presented by this appeal are whether, under the

facts of this case, Code § 19.2-295.1, which requires a separate

proceeding limited to the ascertainment of punishment, and Code

§ 18.2-67.7, which is known as the "rape shield law," are ex

post facto laws.  We hold that they are not.

                                I.

     The grand jury indicted Donald Robert Pilcher for

committing fornication on three occasions with his daughter in

---

[*] Retired Judge Charles H. Smith, Jr., took part in the
consideration of this case by designation pursuant to Code
§ 17.1-400.

[**] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

violation of Code § 18.1-191.  All the events were alleged to have occurred between June 10, 1969 and March 30, 1970 under a statute that has since been recodified and amended.  In a pretrial pleading and at a pretrial hearing, Pilcher's attorney contended that the law of evidence must be the law in effect at the time the crimes were committed.

At trial, one of Pilcher's daughters testified that between June 10, 1969 and March 30, 1970, which was before her seventeenth birthday, Pilcher had sexual intercourse with her on at least three occasions.  In the first incident, Pilcher called her into a room in the basement and "inserted either his finger or his thumb" and a metal crescent wrench handle into her vagina before inserting his penis inside her.  She said Pilcher commented that he wanted to let her know what boys would be doing to her later in life so she would know what to expect.  Pilcher's daughter also testified that, a few weeks later, Pilcher again had sexual intercourse with her in the basement.  Pilcher once more had sexual intercourse with her several weeks later.

During cross-examination of the daughter, the following conversation occurred:

> Q:  Well, let me ask you this:  Prior to this time, had you ever had sexual intercourse with somebody to know . . .
>
> [PROSECUTOR]:  Objection, Your Honor.

\* \* \* \* \* \* \*

    . . . [He] is fully aware that is an improper question.

    [JUDGE]:  All right, sustained.

    [DEFENSE ATTORNEY]:  Well judge, I have a right to find out how she knows.

    [JUDGE]:  She has told you.  You can ask her how she knows it.

    [DEFENSE ATTORNEY]:  Well, I am trying to find out.

    [JUDGE]:  Not along that line.

\* \* \* \* \* \* \*

    [DEFENSE ATTORNEY]:  How did you know what sexual intercourse was?

    A:  I learned it from my father.

In two pretrial statements to the police, Pilcher admitted he touched his daughter's sexual parts, inserted objects into her, and had "oral sex" with her on numerous occasions.  He denied, however, having intercourse with her, and said he "would not take the chance of impregnating her."

At the conclusion of the evidence the jury convicted Pilcher of committing fornication with his daughter as charged in the three indictments.

## II.

The Constitution of the United States, Article 1, § 10, and the Constitution of Virginia, Article 1, § 9, prohibit the General Assembly from enacting ex post facto laws.  The Supreme Court has traditionally recognized four categories of ex post

<u>facto</u> criminal laws:

> 1st.  Every law that makes an action done before the passing of the law, and which was <u>innocent</u> when done, criminal; and punishes such action.  2d.  Every law that <u>aggravates a crime</u>, or makes it <u>greater</u> than it was when committed.  3d.  Every law that <u>changes the punishment</u>, and inflicts a <u>greater punishment</u>, than the law annexed to the crime, when committed.  4th.  Every law that alters the <u>legal</u> rules of <u>evidence</u>, and receives less, or different, testimony, then the law required at the time of the commission of the offence, <u>in order to convict the offender</u>.

<u>Calder v. Bull</u>, 3 U.S. 386, 390 (1798).  <u>See also</u> <u>Collins v. Youngblood</u>, 497 U.S. 37, 42 (1990).

"It is equally well settled, however, that '[t]he inhibition upon the passage of <u>ex</u> <u>post</u> <u>facto</u> laws does not give a [defendant] a right to be tried, in all respects, by the law in force when the crime charged was committed.'"  <u>Dobbert v. Florida</u>, 432 U.S. 282, 293 (1977) (citations omitted).  In addition, the Court has held that no <u>ex</u> <u>post</u> <u>facto</u> violation occurs if the change effected by the law is merely procedural and does "not increase the punishment nor change the ingredients of the offence or the ultimate facts necessary to establish guilt."  <u>Hopt v. Utah</u>, 110 U.S. 574, 590 (1884).  For example, in <u>Dobbert</u>, the Supreme Court cited the following example of a procedural change that was not considered <u>ex</u> <u>post</u> <u>facto</u> even though it worked to the disadvantage of a defendant:

> [I]n <u>Hopt v. Utah</u>, 110 U.S. 574 (1884), as of the date of the alleged homicide a convicted felon could not have been called as a witness.  Subsequent to that date, but prior to the trial of the case, this law was changed; a convicted felon was called to the

- 4 -

> stand and testified, implicating Hopt in the crime charged against him. Even though this change in the law obviously had a detrimental impact upon the defendant, the Court found that the law was not <u>ex post facto</u> because it neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict. <u>Id.</u>, at 589.

<u>Dobbert</u>, 432 U.S. at 293. In other words, although it is possible for retroactive application of a procedural law to violate the <u>ex post facto</u> clause, a violation only occurs when one of the four recognized categories of <u>ex post facto</u> law is implicated. <u>Rose v. Lee</u>, 252 F.3d 676, 684 (4th Cir. 2001).

### III.

At trial, Pilcher's attorney argued that the "rape shield" law was an <u>ex post facto</u> prohibition against his use of impeachment evidence. He also argued that the statutory requirements -- that the party offering evidence file a written notice describing the evidence and that the judge conduct an evidentiary hearing -- change the rules of evidence and, therefore, violate the prohibition against <u>ex post facto</u> laws.

Relevant to the issues in this case, the pretrial discussions concerning these issues included the following:

[PILCHER'S ATTORNEY]:  [W]e are talking about rules of evidence, if you can show that someone else had sexual intercourse with this [child] and not [Pilcher], then that shows she is lying, and the case is Dodson versus Commonwealth[, 170 Va. 630, 196 S.E. 623 (1938)].  It is a case in Virginia under the old law which deals with the fact that you can show it for credibility, even though it is not an issue, and . . . I mean it otherwise has to be relevant and admissible, but to the extent it is relevant and admissible, this Rape Shield Statute seems to make it excludable. It is a defense that a person has, and it is a defense that he would have had, if . . . otherwise . . . it [is] admissible, that they are trying to pass a new law to exclude, and that is what the ex post facto says you can't.

So I mean what I introduce may or may not be admissible at the time of the trial, . . . we don't even know what is coming up. I mean they don't really know what we are going to ask her on cross examination . . . until it happens, but the thing is that from the point of view of the Rape Shield law, that has no applicability; that is all I am saying.  The Rape Shield law is . . .

[THE COURT]:  Well, what is it that you think you are going to ask her that is going to allow you to use testimony of somebody else?

[PILCHER'S ATTORNEY]:  I am not so sure, but other sexual encounters not with [Pilcher], that he didn't ever have sexual intercourse with her.  I contend [Pilcher] never had sexual intercourse with her, ever.

*     *     *     *     *     *     *

And some of the questions could, maybe won't, but could go into other sexual encounters with other people, and that is admissible under Dodson . . . even though under fifteen and so forth there is no

consent.  That is not an issue, but you can still show it for credibility, and that case is right smack on point and holds that.

My only issue here is that the Rape Shield Statute wouldn't bar me if I am otherwise going to use it, and that is just clear.  it is on all fours, and that other case holds that.

*     *     *     *     *     *     *

[PROSECUTOR]:  What I am trying to avoid is a situation in which the witness is asked questions about her prior sexual history without having any idea whether it is objectionable because there has been no hearing ahead of time.

[JUDGE]:  Well, what we will do, you will put her on direct, see what she says, and we will take a recess, see what you are going to ask her, and then I will rule on whether you can ask her or you can't ask her.

[PILCHER'S ATTORNEY]:  . . . I am just trying to get this straight, insofar as the pre-trial argument is concerned, that is an evidentiary procedure that we didn't know, we didn't use to have to disclose that, what we are going to do at the trial under the old rule.  That changes the rule of evidence. . . .

*     *     *     *     *     *     *

My only point is that the Rape Shield Statute has no application because . . .

[JUDGE]:  It doesn't have any application in a case that doesn't involve rape.[1]

---

[1] Neither Pilcher nor the Commonwealth briefed or argued the issue whether Code § 18.2-67.7, which contains the proviso "[i]n a prosecution under this article," applies to a prosecution for incest under former Code § 18.1-191 or to the currently analogous incest statute of Code § 18.2-366, which is in a different article than Code § 18.1-191 and Code § 18.2-67.7. Without any discussion of this issue, both parties appear to

> [PILCHER'S ATTORNEY]: Where the evidence is
> otherwise admissible, you don't have to show
> prior to the trial admissibility and all of
> that, that statute is a change in the rule
> of evidence. . . .  In other words, it tends
> to exclude evidence . . . maybe you can do
> it and get it in, but it is a statute to
> exclude evidence, and that statute would
> then take away from the defense, and . . .
> Cu[l]ber[t]son versus Commonwealth, [137 Va.
> 752, 119 S.E. 87 (1923)], that is clearly on
> point, . . . makes it inadmissible. . . .

In Carmell v. Texas, 529 U.S. 513, 529 (2000), the Supreme Court held that a law was ex post facto when it "changed the quantum of evidence necessary to sustain a conviction . . . [such that] under the new law, petitioner could be (and was) convicted on the victim's testimony alone, without any corroborating evidence."  Reversing the conviction, the Court ruled that the Texas statute, which changed the law, was "a sufficiency of the evidence rule . . . [and] does not merely 'regulat[e] . . . the mode in which the facts constituting guilt may be placed before the jury.'"  529 U.S. at 545 (citation omitted).  In so ruling, however, the Supreme Court held that "[t]he issue of the admissibility of evidence is simply different from the question whether the properly admitted evidence is sufficient to convict the defendant.  Evidence admissibility rules do not go to the general issue of guilt

---

assume the statute is applicable and that the only issue before the judge was whether the statute was ex post facto.  Thus, we do not decide whether it was applicable but merely assume for purposes of deciding this case it does.

. . . ." 592 U.S. at 546. "[I]t is now well settled that statutory changes in the mode of trial or the rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited." Beazell v. Ohio, 269 U.S. 167, 170 (1925).

As the Supreme Court of Virginia has noted, the "rape shield" law was adopted to "limit or prohibit the admission of general reputation evidence as to the prior unchastity of the complaining witness, but . . . [to] permit the introduction of evidence of specific acts of sexual conduct between the complaining witness and third persons in carefully limited circumstances." Winfield v. Commonwealth, 225 Va. 211, 218, 301 S.E.2d 15, 19 (1983). Indeed, the Court further observed that the "law gives a defendant access for the first time to far more probative evidence: specific prior sexual conduct with third persons, if it is relevant for the purposes set forth in Code § 18.2-67.7." Winfield, 225 Va. at 220, 301 S.E.2d at 20. Thus, to the extent that Pilcher contends the statutory change affects the rules of evidence, we note that the United States Supreme Court also has held that "the prescribing of different modes or procedure . . . , leaving untouched all the substantial protections with which the existing law surrounds the person accused of crime, are not considered within the constitutional inhibition." Duncan v. Missouri, 152 U.S. 377, 382-83 (1894). Likewise, "[s]o far as mere modes of procedure are concerned a party has no more right, in a criminal than in a civil action,

- 9 -

to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place."  Mallett v. North Carolina, 181 U.S. 589, 596-97 (1901) (citation omitted).

Applying these ex post facto principles to this case, we hold that Pilcher has not demonstrated that the statute affected his substantive rights, and we further hold that it is not an ex post facto law as applied in this case.  In so holding, we note that courts of other jurisdictions, when confronted with similar ex post facto arguments in regard to rape shield statutes, have reached the same result.  See Turley v. State, 356 So.2d 1238, 1243-44 (Ala. App. 1978) (holding that a rape shield statute was not ex post facto when it barred evidence of a prior sexual relationship that was admissible before enactment of the statute); People v. Dorff, 396 N.E.2d 827, 885-86 (Ill. App. 1979) (holding that a statute is not ex post facto when it created an "alteration in rules of evidence . . . [, which] served only to prevent use of certain evidence relating to the alleged victim's credibility, and had no bearing upon evidence relating to the crime itself"); Finney v. State, 385 N.E.2d 477, 480-81 (Ind. App. 1979) (holding that the "rape shield statute affects the use of character evidence to impeach witnesses . . . and is therefore procedural in nature").

We further note that when the witness testified at trial Pilcher did not request a recess and did not make the requisite

showing of relevance of the testimony outside the jury's presence.  Thus, despite Pilcher's suggestion that Code § 18.2-67.7 barred the evidence, the real cause of the exclusion in this case was his failure to follow the statute's procedures.

IV.

Pilcher contends the application of Code § 19.2-295.1 in this prosecution was ex post facto because it permitted "different testimony from what was permitted at the time of commission of the crime."  Pilcher argues that the statutory requirements -- that the jury is required to ascertain punishment in a separate proceeding -- is a change in the rules of evidence, which violates the prohibition against ex post facto laws.

In pertinent part, the statute provides that "[i]n cases of trial by jury, upon a finding that the defendant is guilty of a felony, . . . a separate proceeding limited to the ascertainment of punishment shall be held as soon as practicable before the same jury."  Code § 19.2-295.1.  Before the statute's enactment, a jury in a non-capital trial considered a defendant's guilt and punishment in one proceeding.  See Riley v. Commonwealth, 21 Va. App. 330, 337, 464 S.E.2d 508, 511 (1995).  "The purpose of the bifurcated trial is to allow the trier of fact to consider the prior . . . record of the accused for sentencing purposes while avoiding the risk of prejudice to the accused when determining guilt or innocence."  Byrd v. Commonwealth, 30

- 11 -

Va. App. 371, 373, 517 S.E.2d 243, 244 (1999) (citation omitted).

Pilcher argues that a bifurcated trial gives the Commonwealth a "substantive advantage" because the jury has to determine guilt or innocence without knowing the range of punishment available. He contends that in some cases, if jurors know how severe the punishment could be, they would change their votes from guilty to not guilty. Thus, he concludes the application of Code § 19.2-295.1 to this case violated the ex post facto clause because in 1969, the jurors were aware of its sentencing options while determining guilt.

"Although the Latin phrase 'ex post facto' literally encompasses any law passed 'after the fact,' it has long been recognized by [the Supreme] Court that the constitutional prohibition on ex post facto laws applied only to penal statutes which disadvantage the offender affected by them." Collins, 497 U.S. at 41. As we noted earlier, no ex post facto violation occurs if the change effected by the law is merely procedural and does "not increase the punishment nor change the ingredients of the offence or the ultimate facts necessary to establish guilt." Hopt, 110 U.S. at 590. The prohibition against ex post facto laws was "intended to secure substantial personal rights against arbitrary and oppressive legislative action." Malloy v. South Carolina, 237 U.S. 180, 183 (1915).

Under a similar rationale, this Court has held that Code

- 12 -

§ 19.2-295.1 is not an ex post facto law.  Bunn v. Commonwealth, 21 Va. App. 593, 598, 466 S.E.2d 744, 746 (1996).  We ruled that the enactment of Code § 19.2-295.1 and its application do not violate ex post facto protections because the statute "'does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with [a] crime of any defense available according to law at the time when the act was committed.'"  Id. (quoting Collins, 497 U.S. at 52).  See also Riley, 21 Va. App. at 337, 464 S.E.2d at 511 (noting that the statute is procedural in nature and "does not convey a substantive right").  Therefore, we hold the statute did not affect the substantive rights of Pilcher and is not an ex post facto law.

V.

In summary, we hold that the procedural changes wrought by Code § 18.2-67.7 and Code § 19.2-295.1 do not implicate the prohibition on ex post facto laws.  As the Supreme Court held long ago,

> alterations which do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt . . . relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure.

Hopt, 110 U.S. at 590 (emphasis added).

For these reasons, we affirm the convictions.

<u>Affirmed</u>.