JOURNAL ENTRY AND OPINION.
{¶ 1} The appellant, Delawrence Gray, appeals his conviction and sentence by the Cuyahoga County Court of Common Pleas, Criminal Division. Upon our review of the arguments of the parties and the record presented, we reverse the conviction and sentence of the trial court and remand for the reasons set forth below.
 {¶ 2} Appellant Delawrence Gray ("appellant") was indicted in February 2002 on three counts of unlawful sexual conduct with a minor, pursuant to R.C. 2907.04. Appellant submitted a duly executed jury waiver, and a bench trial commenced on August 6, 2002. He was found guilty on all counts, sentenced to two years community control and was classified as a sexually oriented offender.[1]
 {¶ 3} Four witnesses testified for the State, including the victim, a 14-year-old female ("the child"). The child testified that she met Gray in her neighborhood and that they began a friendship, which included numerous daily telephone calls. Gray initially told the child that he was 24 years old; the child was honest with Gray about her age from the beginning of their relationship. The child then testified that the friendship progressed into a physical relationship and that the sexual encounters in question were consensual. The alleged sexual activity took place at the home of Gray's parents on East 131 Street. The child testified that she had sex with Gray up to five times in December 2001 and January 2002, and that she noticed nothing unusual about his anatomy during their encounters. She further testified that all of the sexual encounters took place in the morning before she went to school, that Gray drove her to school on those occasions, and that she considered him her boyfriend.
 {¶ 4} The child's father and two Cleveland police officers, John Kraynik and Carlos Robles, also testified for the State regarding the circumstances surrounding the discovery of the relationship and their investigation. The child's father testified that he took the child to the emergency room at Marymount Hospital for examination immediately upon discovering the relationship. The child called Gray from the hospital to warn him that their relationship had been made known to her family. The father testified that he had taken the phone from his daughter on that day and spoke to Gray, as well as having several other "man-to-man" conversations with Gray after he discovered the relationship. Gray admitted to the child's father that there was some kind of relationship with the child that had "gotten out of hand."
 {¶ 5} The police officers testified that Gray was marginally cooperative with the investigation; however, he not only denied having sex with the child, but also denied being acquainted with any of the children in the neighborhood. Investigators attempted to search his parents' residence, but were not permitted inside and did not return with a search warrant. Gray surrendered himself to the police once a warrant was issued for his arrest, pursuant to his indictment.
 {¶ 6} Gray's only witness was his mother, Carolyn Gray. She testified that Gray had been shot in 1993 during a robbery. As a result, he suffered injuries to his genital area, including the loss of one testicle. Ms. Gray further testified that she had not seen the injury since 1993 when she was assisting her son during his recovery from surgery, and she did not know the extent of the injury or any current scarring. Gray's medical records, which dated back to the original injury, were admitted into evidence without objection. There was no testimony that Gray was unable to engage in sexual activity as a result of his injuries.
 {¶ 7} Ms. Gray further testified that she owned the house on East 131 Street, that her son did not have a key and that he had not, to her knowledge, been to her home in the mornings on the days the sexual activity was alleged to have occurred.
 {¶ 8} After extensive deliberation, Gray was convicted by the trial court on all three counts and sentenced as discussed above.
 {¶ 9} Appellant presents two assignments of error for our review.
 {¶ 10} "I. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 11} The court in State v. Martin (1983), 20 Ohio App.3d 172, set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 12} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * See Tibbs v. Florida (1982), 457 U.S. 31, 38, 42." State v. Martin,
(1983), 20 Ohio App.3d 172 at 175.
 {¶ 13} The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. Id. In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in State v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442 and 64443, adopted the guidelines set forth inState v. Mattison (1985), 23 Ohio App.3d 10. These factors, which this court noted are in no way exhaustive, include:
 {¶ 14} "(1) knowledge that even a reviewing court is not required to accept the credible as true; (2) whether evidence is uncontradicted; (3) whether a witness was impeached; (4) attention to what was not proved; (5) the certainty of the evidence; (6) the reliability of the evidence; (7) the extent to which a witness may have a personal interest to advance or defend their testimony; and (8) the extent to which the evidence is vague, uncertain, conflicting or fragmentary." Id.; Clevelandv. Williams, Cuyahoga App. No. 81369, 2003-Ohio-31, at ¶ 15.
 {¶ 15} The weight given to the evidence and the credibility of witnesses are primarily matters for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169.
 {¶ 16} The trial court had the opportunity to review the appellant's medical records regarding his injury as well as to hear from key witnesses involved in this case. A verdict should only be overturned where the evidence weighs heavily against the conviction. That is not the case here. Based on the above-referenced factors, the trial court could reasonably have relied upon the testimony and evidence to conclude that the state had proved its case beyond a reasonable doubt. This assignment of error has no merit and is therefore overruled.
 {¶ 17} "II. The Trial Court Erred In Disallowing The Review Of The Police Officers' Reports For Inconsistencies, In Not Conducting An In Camera Inspection, And In Not Preserving Said Reports For Appellate Review."
 {¶ 18} Appellant's second assignment of error addresses a defendant's ability to procure police reports for use on cross examination. A defendant is entitled to a Crim.R. 16(B)(1)(g) in camera inspection of a witness' prior written or recorded statement if it is requested after the direct examination of that witness, but before the completion of cross examination. State v. Schnipper (1986)22 Ohio St.3d 158. However, reports or notes taken by a police officer during an interview with a victim or witness in a case are not considered a statement for the purposes of Crim.R. 16(B)(1)(g). Police reports may be considered statements in this context only where the document is the author's own observations and recollection of the events. State v.Jenkins, (1984) 15 Ohio St.3d 164. If evidence is not generally discoverable under Crim.R. 16(B)(2), it will not be available for use under Crim.R. 16(B)(1)(g); for example, those portions of a police report which contain officer's notes regarding witnesses' statements, officer's investigative decisions, interpretations and interpolations are excluded from discovery under Crim.R. 16(B)(2). State v. Atwood (March 22, 1990), Cuyahoga App. No. 56692.
 {¶ 19} After the officers testified, appellant's counsel requested an in camera inspection of the police reports for the purpose of determining whether the child victim or the appellant made any statements which could be used on cross examination. Police reports containing the officers' notes recording the interview with the victim and other portions of the investigative notes are not discoverable under the Criminal Rules; however, just because a document is a police report does not mean it is automatically exempt from the in camera inspection requirement of Crim.R. 16(B)(1)(g).
 {¶ 20} As this court discussed in State v. Robinson (Dec. 22, 1994), Cuyahoga App. No. 66316, "* * * When it is doubtful whether any discoverable statement exists, the court, on motion of the defendant, shall conduct a hearing on the issue of disclosure held in camera with both attorneys present and participating. State v. Daniels (1982),1 Ohio St.3d 69; See, also, Palermo v. United States (1959), 360 U.S. 343;Fortenberry v. State (1975), 55 Ala. App. 1,; State v. Johnson (1978),62 Ohio App.2d 31* * * [T]he state's interpretation of Crim.R. 16(B)(2) in the present case that all police reports are precluded from discovery under the rule is too broad. Portions of police reports dealing with the reporting officer's `observations and recollection of the events' are subject to Crim.R. 16(B)(1)(g) disclosure when properly requested by the defendant. See, Jenkins, supra; see, also, State v. Schnipper (1986),22 Ohio St.3d 158."
 {¶ 21} Where the trial court fails to hold an inspection pursuant to Crim.R. 16(B)(1)(g), a case will not be reversed unless this court finds inconsistencies between the witness' testimony and the prior recorded statement pursuant to an abuse of discretion standard. State v.Hood, Cuyahoga App. No. 80294, 2002-Ohio-4081.
 {¶ 22} In this case, the trial court denied appellant's request for an in camera inspection and failed to preserve the report in question for appellate review; therefore, we cannot make a determination as to whether there exists discoverable police "statements," as discussed above, which would allow defense counsel to use said report in cross examination, nor can we determine if there are inconsistencies between that statement and the officer's testimony. Crim.R. 16(B)(1)(g) mandates that the trial court conduct an in camera review of any document, including a police report, which purports to be a prior statement of a witness and may be used upon cross examination, prior to making any ruling on admissibility pursuant to Crim.R. 16(B)(2). Without the report in question, we cannot review the lower court's ruling. For these reasons, we reluctantly find that the appellant's second assignment of error has merit and must be sustained.
 {¶ 23} Judgment reversed and case remanded for the trial court to conduct an in camera inspection pursuant to Crim.R. 16(B)(1)(g).
COLLEEN CONWAY COONEY, J., AND TIMOTHY E. McMONAGLE, J., CONCUR.
[1] A sexually oriented offender is any person who has been convicted of, or pleaded guilty to, committing a sexually oriented offense, but who has not been designated as a sexual predator or habitual sex offender. Sexually oriented offenders are subject to registration/verification requirements annually for a period of 10 years after release. These offenders are not subject to neighbor/community notification.