JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Derrell Spraggins appeals the trial court's refusal to conduct an in camera inspection of the lead detective's written reports. Spraggins also appeals his subsequent conviction for drug trafficking. Spraggins assigns the following errors for our review:
"I. The trial court erred in not conducting an in camera inspection of the lead detective's summary of his observations and preserving the statement for appellate review required by Criminal Rule 16."
"II. Appellant's conviction for drug trafficking is not supported by sufficient evidence."
 {¶ 2} Having reviewed the record and pertinent law, we reverse and remand the matter to the trial court for further proceedings. The apposite facts follow.
 {¶ 3} On May 13, 2005, the Cuyahoga County Grand Jury indicted Spraggins on two counts of drug trafficking, one count of drug possession, one count of tampering with evidence, and one count of possessing criminal tools. Spraggins pled not guilty at his arraignment, and the matter proceeded to a jury trial.
 {¶ 4} At trial, Detective Michael Duller testified that on February 9, 2005, police officers from the First District's Vice Squad set up a buy/bust operation in an attempt to arrest suspected drug dealers. The operation utilized a male confidential reliable informant ("CRI"). The CRI telephoned a suspected drug dealer and asked him to deliver drugs to the him at the RTA parking lot located at West 140th Street and Triskett, in Cleveland, Ohio.
 {¶ 5} Detective Duller testified that the target suspect did not appear at the appointed time. However, at approximately 7:00 p.m., he observed a green car, driven by a black male, who was later identified as Spraggins. He also observed a red car, driven by a white male, who was later identified as William Frakas, enter the parking lot. The two cars parked next to each other. The respective drivers positioned their cars so that the driver's side doors were next to each other.
 {¶ 6} Detective Duller testified he observed Frakas exit the red car and enter the front passenger seat of Spraggins' car. The CRI approached the car, spoke with Spraggins through the driver's side window, and then walked a few feet away. Frakas then exited Spraggins' car, re-entered his car, and drove a short distance away. The CRI approached Spraggins' car again, spoke with him, and walked away.
 {¶ 7} After the CRI walked away, Spraggins exited his car, walked over to the red car, handed something to Frakas through the driver's side window and walked back to his car. Spraggins spoke with the CRI, who then walked over to Frakas, and had a brief conversation. The CRI handed Frakas the buy money and Frakas handed something to the CRI. The CRI then gave the pre-arranged signal that the transaction was completed.
 {¶ 8} Detective Jonathan Schroeder testified that he was a member of the take-down unit in the buy/bust operation on February 9, 2005. Detective Schroeder stated that after he received notification that the transaction was completed and was given the description of Spraggins' car, he proceeded to block the exit of the RTA parking lot. Detective Schroeder drove his vehicle directly in front of Spraggins' car to block his exit.
 {¶ 9} Detective Schroeder testified that Spraggins immediately reached down towards his waist, retrieved a little plastic sandwich bag, which he placed in his mouth, and began chewing. As the other members of the take-down unit arrived, Spraggins swallowed the plastic bag. Detective Schroeder testified that because he believed that Spraggins had swallowed a plastic bag containing drugs, he asked if he wanted to go to the hospital, but Spraggins refused medical care.
 {¶ 10} Frakas testified that on February 9, 2005, he arranged to meet Spraggins at the RTA train station to purchase crack cocaine. Frakas stated that he and Spraggins were seated in their respective cars talking with each other, when an individual, whom Frakas later discovered was a CRI, approached. The CRI engaged Spraggins in a brief conversation and then walked away.
 {¶ 11} Frakas testified that Spraggins indicated that he was unsure about the individual, and, further indicated that if Frakas would sell the drugs to the individual then Frakas could take some of the crack cocaine for himself. Frakas testified that he reluctantly agreed to engage in the transaction. Frakas stated that Spraggins took the crack cocaine out of a little plastic sandwich bag, instructed him to give the drugs to the CRI, meet Spraggins around the corner, and give him the proceeds from the sale.
 {¶ 12} Frakas testified that the CRI entered the car and Frakas immediately gave him the crack cocaine. The CRI gave him $30, exited the car, and held the newspaper that he was carrying above his head, as if he was signaling someone. Frakas stated that he was apprehended shortly after the CRI walked away.
 {¶ 13} Finally, Frakas admitted that after he was apprehended, he cooperated with the police in the hope that he would get some consideration in the present case.
 {¶ 14} On September 1, 2005, the jury returned guilty verdicts on all five counts of the indictment. The trial court sentenced Spraggins to a one-year term of incarceration.
 In Camera Review {¶ 15} In the first assigned error, Spraggins argues the trial court erred in not conducting an in camera review of the lead detective's observations and in failing to impound and preserve the report for appellate review. We agree.
 {¶ 16} A defendant is entitled to a Crim.R. 16(B)(1)(g) in camera inspection of a witness' prior written or recorded statement if it is requested after the direct examination of that witness, but before the completion of cross-examination.[1]
However, reports or notes taken by a police officer during an interview with a victim or witness in a case are not considered a statement for the purposes of Crim.R. 16(B)(1)(g). Police reports may be considered statements in this context only where the document contains the author's own observations and recollection of the events.[2] If evidence is not generally discoverable under Crim.R. 16(B)(2), it will not be available for use under Crim.R. 16(B)(1)(g); for example, those portions of a police report which contain officers' notes regarding witnesses' statements, officers' investigative decisions, interpretations and interpolations are excluded from discovery under Crim.R. 16(B)(2).[3]
 {¶ 17} In the instant case, Detective Michael Duller, the lead detective in the buy/bust operation, testified that he had composed an arrest report and a narrative report of the investigation. When Spraggins' counsel requested an in camera inspection of the reports, the State claimed the reports were not discoverable, because they were work product. The trial court denied the request and failed to preserve the reports for appellate review.
 {¶ 18} When it is doubtful whether any discoverable statement exists, the court, on motion of the defendant, shall conduct a hearing on the issue of disclosure held in camera with both attorneys present and participating.[4] Where the trial court fails to hold an inspection pursuant to Crim.R. 16(B)(1)(g), a case will not be reversed unless this court finds inconsistencies between the witness' testimony and the prior recorded statement pursuant to an abuse of discretion standard.[5]
 {¶ 19} However, in the instant case, the trial court denied Spraggins' request for an in camera inspection and failed to preserve the reports in question for appellate review. As a result, we cannot determine whether discoverable police statements exist which would allow defense counsel to use the reports in cross-examination. We are also unable to determine whether there are inconsistencies between those statements and Duller's testimony.
 {¶ 20} Crim.R. 16(B)(1)(g) mandates that the trial court conduct an in camera review of any document, including a police report, which purports to be a prior statement of a witness and may be used upon cross-examination, prior to making any ruling on admissibility pursuant to Crim.R. 16(B)(2). Without the reports in question, we cannot review the lower court's ruling.[6]
Accordingly, we sustain Spraggins' first assigned error and remand to the trial court for a new trial.
 {¶ 21} Our disposition of Spraggins' first assigned error renders his second assigned error moot.
Judgment reversed and remanded for new trial.
It is, therefore, considered that said appellant recover from said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Diane Karpinski, P.J., and Christine T. Mcmonagle, J., concur.
[1] State v. Schnipper (1986), 22 Ohio St.3d 158.
[2] State v. Jenkins (1984), 15 Ohio St.3d 164.
[3] State v. Atwood (March 22, 1990), Cuyahoga App. No. 56692.
[4] State v. Daniels (1982), 1 Ohio St.3d 69. See, also,Palermo v. United States (1959), 360 U.S. 343, 3 L.Ed.2d 1287,79 S.Ct. 1217; Fortenberry v. State (1975), 55 Ala.App. 1, 312
So.2d 573; State v. Johnson (1978), 62 Ohio App.2d 31.
[5] State v. Hood, Cuyahoga App. No. 80294, 2002-Ohio-4081.
[6] State v. Gray, Cuyahoga App. No. 82045, 2003-Ohio-4670.